IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

STARNES FAMILY OFFICE, LLC,      )
                                 )
    Plaintiff,                 )
                                 )
v.                             )    No.  10-2186
                               )
MEREDITH McCULLAR,             )
                               )
    Defendant.                )
                               )
and                             )
                               )
MEREDITH McCULLAR,             )
                               )
    Third-Party Plaintiff,    )
                               )
v.                             )
                               )
MICHAEL S. STARNES,          )
                               )
    Third-Party Defendant.    )

---

**ORDER ON MOTIONS**

---

    Plaintiff Starnes Family Office, LLC ("SFO") sues Defendant Meredith McCullar ("McCullar"), alleging that he owes SFO more than $1.5 million as co-maker of two promissory notes. (See Compl. ¶¶ 5-8, ECF No. 1.)  McCullar denies the allegations and brings counterclaims against SFO and third-party claims against Third-Party Defendant Michael S. Starnes ("Starnes"). (See Answer, Counter Compl. and Third Party Compl., ECF No. 6; Am. Answer, Counter Compl. and Third Party Compl., ECF No. 19.)

Before the Court are two motions to strike filed by SFO on May 17, 2010.   (See Pl.'s Combined Mot. and Mem. to Strike Affirmative Defenses and Counter Claim, ECF No. 9 ("Mot. to Strike Defenses"); Mot. to Strike Jury Demand, ECF 10.) McCullar responded on June 1, 2010.   (See Def.'s Resp. in Opp'n to Pl.'s Mot. to Strike Jury Demand, ECF No. 15 ("Resp. to Jury Demand"); Meredith McCullar's Resp. to Pl.'s Mot. to Strike Affirmative Defenses and Counter Claim, ECF No. 16 ("Resp. to Defenses").)   SFO replied on June 15, 2010.   (See Reply Mem. in Supp. of Mot. to Strike Affirmative Defenses and Counterclaim, ECF No. 23; Reply Mem. in Supp. of Mot. to Strike Jury Demand, ECF No. 24.)   With leave of Court, McCullar filed surreplies on July 2, 2010.   (See Surreply Br. of Meredith McCullar in Opp'n to Mot. to Strike Affirmative Defenses and Counterclaim, ECF No. 33 ("Def.'s Surreply to Defenses"); Surreply Br. of Meredith McCullar in Opp'n to Mot. to Strike Jury Demand, ECF No. 34.)

Also before the Court are a motion to dismiss and a motion to strike jointly filed by SFO and Starnes on May 17, 2010.[1] (See Pl. Starnes Family Office, LLC's and Third-Party Def. Michael S. Starnes' Combined Mot. and Mem. to Dismiss Third

---

[1] The motion to dismiss the third-party complaint purports to be a joint motion by SFO and Starnes. (See Pl. Starnes Family Office, LLC's and Third-Party Def. Michael S. Starnes' Combined Mot. and Mem. to Dismiss Third Party Compl., ECF No. 12.) ("Mot. to Dismiss") SFO is not a party to the third-party complaint. (See Am. Third Party Compl., ECF No. 19.) Therefore, the Court construes the motion to dismiss as if it had been filed by Starnes only.

Party Compl., ECF No. 12 ("Mot. to Dismiss"); Pl. Starnes Family Office, LLC's and Third-Party Def. Michael S. Starnes' Combined Mot. and Mem. to Strike Allegations Relating to Starnes' Competence, ECF No. 11 ("Mot. to Strike Allegations").) McCullar responded on June 1, 2010. (See Def. and Third Party Pl. Meredith McCullar's Mem. in Opp'n to Pl.'s and Third Party Def.'s Mot. to Strike Allegations Relating to Starnes' Competence, ECF No. 17 ("Resp. to Allegations"); Meredith McCullar's Resp. in Opp'n to Pl.'s and Third Party Def.'s Mot. to Dismiss Third Party Compl., ECF No. 18 ("Resp. to Dismiss").) SFO and Starnes replied on June 15, 2010. (See Pl. Starnes Family Office, LLC.'s and Third-Party Def. Michael S. Starnes' Reply Mem. in Supp. of Mot. to Strike Allegations Relating to Starnes' Competence, ECF No. 25; Pl. Starnes Family Office, LLC's and Third-Party Def. Michael S. Starnes' Reply Mem. in Supp. of Mot. to Dismiss Third Party Complaint, ECF No. 26.) With leave of Court, McCullar filed surreplies on July 2, 2010. (See Surreply Br. of Meredith McCullar in Opp'n to Mot. to Strike Allegations Regarding Starnes' Competence, ECF No. 31; Surreply Br. of Meredith McCullar in Opp'n to Mot. to Dismiss Third Party Compl., ECF No. 32.)

For the following reasons, the Court GRANTS SFO's Motion to Strike Affirmative Defenses and Counter Claim, GRANTS SFO's Motion to Strike Jury Demand, GRANTS IN PART and DENIES IN PART

Starnes' Motion to Dismiss Third Party Complaint, and DENIES SFO's and Starnes' Motion to Strike Allegations Regarding Starnes' Competence.

## I.   Background

SFO sues to recover from McCullar as co-maker of two promissory notes, but the litigation arises in the context of a business relationship turned sour. McCullar alleges that he and Starnes had been friends since 1990 when, in 2003, Starnes suggested they go into business together. (Am. Counter Compl. ¶ 2, ECF No. 19.) At the time, McCullar was an established real estate developer, and Starnes had acquired significant personal wealth from a Memphis, Tennessee-based trucking company he sold in 2001. (Id. ¶¶ 1-2.) McCullar agreed to work with Starnes, and they formed various partnerships, limited liability companies, and other business entities (the "Entities"), through which they acquired real estate in and around Memphis and northern Mississippi. (Id. ¶ 2.)

To purchase and sell real estate, Starnes and McCullar took on various loans from 2003 to 2006 (the "Loans"), which were secured by the Entities' real estate holdings and Starnes' personal guarantees. (Id. ¶ 5.) McCullar alleges that, when they obtained the Loans, they "understood and agreed" that "only Starnes had the personal financial resources and wherewithal to service and back the [Loans] if . . . the value of the real

4

estate being used as collateral was insufficient to do so" and that "McCullar lacked this financial capability and would not be expected to do so." (Id. ¶ 6.)   According to McCullar, their business ventures did well, but "it was always understood between Starnes and McCullar that Starnes' primary contribution to the business ventures and partnerships was his enormous financial capability and access to credit and that McCullar's primary contribution was his experience and expertise in the real estate market." (Id. ¶ 4.)

In January 2006, Starnes suffered a stroke that limited his contact with individuals other than "a few select family members and business, legal, and financial associates." (Id. ¶ 7.) Since then, McCullar has done business primarily through Starnes' agents and representatives. (Id.) Whenever McCullar met with Starnes after January 2006, McCullar found that Starnes was unable to communicate effectively, leading McCullar to question Starnes' competence. (Id. ¶¶ 7-8.)

In 2007 and 2008, the real estate market collapsed, and the Entities' holdings declined in value such that they were no longer sufficient to secure the Loans. (See id. ¶ 9.) Because McCullar was unable to satisfy his portion of the Loans, the parties entered into an agreement on August 15, 2008 (the "Agreement"). (See id. ¶ 11.) Although Starnes signed the Agreement himself, Raymond Blankenship and Robert Orians

negotiated on behalf of Starnes and signed the Agreement as his attorneys-in-fact. (Id. ¶ 12.)

The Agreement states that the Entities have approximately $26.5 million in debt obligations and lack the capital to service that debt. (Id. ¶ 13; see also Ex. A, at 1, ECF No. 6-1.)   It states that "McCullar has indicated that he is not capable, at this time, of funding his proportionate share of any capital contribution necessary to capitalize" the Entities and that "Starnes has agreed to finance the costs of [the Entities] for the time being, upon the terms and subject to the conditions set forth herein." (Am. Counter Compl. ¶ 13; see also Ex. A., at 1.)   The Agreement does not include a termination date. (Am. Counter Compl. ¶ 16.)   McCullar alleges that the Agreement was to operate "until all of the real estate involved was disposed of or the Agreement itself was no longer necessary because of an improvement in the real estate market, which was anticipated to take between two to five years." (Id.)

The Agreement identifies a line of credit with BankPlus as one of the Entities' debt obligations. (See Am. Counter Compl. ¶ 18; see also Ex. A, ¶ 1(a)(iv).)   When BankPlus refused to restructure the Entities' debt, Blankenship arranged for Independent Bank of Memphis ("Independent Bank") to loan McCullar and Starnes approximately $3 million, which they used to satisfy the Entities' obligation to BankPlus. (See Am.

Counter Compl. ¶ 18.)   In return for that loan, on November 26, 2008, McCullar and Starnes executed the two promissory notes to Independent Bank (the "Notes") that are the subject of this litigation.   (Id.; see Compl. ¶ 5.)   Starnes also provided $6 million in personal collateral to guarantee the Notes.   (Am. Counter Compl. ¶ 18.)

Although McCullar and Starnes were jointly and severally liable under the Notes and the Notes had a one-year maturity date of November 25, 2009, McCullar alleges that "it was understood between McCullar and Starnes or Starnes' representatives that the maturity date on the Notes would be extended by Independent Bank, if necessary, as a matter of course." (Id. ¶ 19.)   According to McCullar, it was understood by Starnes or his representatives that McCullar would not be able to pay his share of the Notes by their November 25, 2009 maturity date and that, if Independent Bank refused to extend their maturity date, Starnes would personally assume the Notes and McCullar's obligation to Starnes would be added to the amount he owed Starnes under the Agreement.   (See id. ¶ 20.) McCullar alleges that he relied on that "understanding" when he executed the Notes.   (See id.)

On April 6, 2009, SFO was created.   (Id. ¶ 21.)   According to McCullar, Starnes was an officer of SFO, and SFO was managed by SFO Management.   (Id.)   McCullar also alleges that Starnes

7

was the chief operating officer of SFO Management and sat on its board of directors. (Id.) On August 21, 2009, SFO purchased the Notes from Independent Bank. (See id. ¶ 22.) The Notes have matured, and McCullar has not made any payments on them. (Compl. ¶¶ 6-7.)

SFO filed this suit against McCullar, alleging that it holds the Notes as a "holder in due course" and that Starnes, McCullar's co-maker on the Notes, has satisfied one half of the total due under them. (See Compl. ¶¶ 6-7.) McCullar denies that SFO is "entitled to any relief from him under any theory whatsoever," pleads various affirmative defenses, alleges a counterclaim against SFO, and alleges third-party claims against Starnes. (See Am. Answer ¶¶ 10, 12-19, ECF No. 19; Am. Counter Compl., Am. Third Party Compl., ECF No. 19.)

## II. Jurisdiction and Choice of Law

SFO alleges that the Court has diversity jurisdiction over its claim against McCullar. (Compl. ¶ 3); see 28 U.S.C. § 1332(a)(1). SFO is a Tennessee limited liability company whose sole member is a citizen of Tennessee. (Compl. ¶ 2.) McCullar is a citizen of Texas. (Id.) Complete diversity exists. See 28 U.S.C. § 1332(a)(1). Because SFO seeks more than $1.5 million under the Notes, more than $75,000 is in controversy. See id.; (Compl. ¶ 7). Therefore, the Court has subject matter

jurisdiction over SFO's claim based on diversity of citizenship. See 28 U.S.C § 1332(a)(1).

McCullar alleges that the Court has diversity jurisdiction over his third-party claims against Starnes. (Third Party Compl. ¶ 3); see 28 U.S.C. § 1332(a)(1). McCullar is a citizen of Texas, and Starnes is a citizen of Tennessee. (Am. Third Party Compl. ¶ 3.) Complete diversity exists. See 28 U.S.C. § 1332(a)(1). McCullar seeks compensatory damages "in an amount in excess of $75,000," indemnification for any amount for which he is held liable to SFO, and punitive damages of $1.5 million. (See Am. Third Party Compl. ¶¶ 2-4.) Therefore, the amount-in-controversy requirement is satisfied, and the Court has subject matter jurisdiction over McCullar's third-party claims based on diversity of citizenship. See 28 U.S.C. § 1332(a)(1).

In a diversity action, state substantive law governs. Erie R.R. Co. v. Tompkins, 304 U .S. 64 (1938). A federal district court is required to apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Klaxon, 313 U.S. at 496. Therefore, Tennessee choice of law rules apply.

Tennessee follows the rule of lex loci contractus, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent. Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing Ohio Cas. Ins. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)). "If the parties manifest an intent to apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met": 1) the choice of law provision must be executed in good faith, 2) the "chosen jurisdiction must bear a material connection to the transaction," 3) the "basis for the choice of law must be reasonable," and 4) the choice of "another jurisdiction's law must not be 'contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern.'" Id. (citing Restatement (Second) of Conflict of Laws § 187(2) (1971)).

The Notes include a choice of law provision stating that they will be governed by, "to the extent not preempted by federal law, the laws of the State of Tennessee." (See Ex. A, at 4, ECF No. 1-1; Ex. B., at 4, ECF No. 1-2.) Neither party suggests that the choice of law provision was not entered into in good faith, and both parties assume that Tennesssee law applies. (See, e.g., Mot. to Strike, 12-14; Resp. to Defenses 10-13.) The choice of Tennessee law is reasonable because

McCullar and Starnes executed the Notes to evidence a loan from Independent Bank in Memphis, Tennessee.   Therefore, Tennessee substantive law applies to SFO's claim arising out of the Notes.

McCullar's counterclaims against SFO and his third-party claims against Starnes sound in both contract and tort.   (See Am. Third Party Compl. ¶¶ 8-17.)   To the extent McCullar's claims arise out of the Agreement, they sound in contract.   The Agreement contains a choice of law provision stating that it "shall be construed in accordance with and governed by the laws of the State of Tennessee." (Ex. A ¶ 8(g).)   No party suggests that the choice of law provision was not entered into in good faith, and all parties assume that Tennesssee law applies. (See, e.g., Mot. to Strike Defenses, 12-14; Resp. to Defenses 10-13; Mot. to Dismiss 3-4; Resp. to Dismiss 10-11.)   The choice of Tennessee law is reasonable because McCullar and Starnes entered into the Agreement to govern their real estate investments, some of which were in Tennessee.   Therefore, Tennessee substantive law applies to McCullar's contract claims.

To the extent McCullar's claims sound in tort, Tennessee substantive law also governs.   Tennessee has adopted the "most significant relationship" rule for torts under the Restatement (Second) of Conflict of Laws, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the

11

litigation." <u>Hataway v. McKinley</u>, 830 S.W.2d 53, 59 (Tenn. 1992).   The injury McCullar alleges occurred in Tennessee, and all parties agree that Tennessee law applies.   (<u>See, e.g.</u>, Mot. to Strike Defenses, 12-14; Resp. to Defenses 10-13; Mot. to Dismiss 3-4; Resp. to Dismiss 10-11.)   No other state has a more significant relationship to the litigation.

### III. Motion to Strike Affirmative Defenses and Counter Claims

SFO moves to strike all of McCullar's affirmative defenses in their entirety because they are insufficient as a matter of law.  (<u>See</u> Mot. to Strike Defenses 1.)  SFO also moves to strike McCullar's counterclaims.  (<u>Id.</u>)

Courts have "held that a motion to strike is an inappropriate procedural mechanism to challenge an allegation in a complaint that is not 'redundant, immaterial, impertinent, or scandalous' or that does not state an insufficient defense." <u>See</u> <u>Deluca v. Michigan</u>, No. 06-12552, 2007 WL 1500331, at *1 (E.D. Mich. May 23, 2007) (citing 5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1380 (3d ed. 2004)).  Where a motion argues that a party is not entitled to the relief he seeks, it is construed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), even if the motion is denominated a "motion to strike."  <u>See</u> <u>id.</u> (explaining that "the technical name given to a motion challenging a

12

pleading is of little importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss").

Although SFO styles its motion a "motion to strike," a part of SFO's argument is that McCullar is not entitled to relief on his counterclaims for fraud, breach of contract, and breach of fiduciary duty. (<u>See</u> Mot. to Strike Defenses 6-17.) The Court construes that portion of SFO's motion to strike as a motion to dismiss and will apply the standard of review applicable to motions brought under Rule 12(b)(6).[2]  <u>Cf.</u> <u>Deluca</u>, 2007 WL 1500331, at *1

### A. Standards of Review

#### 1. Motion to Strike

---

[2] There is some authority for the proposition that, under Federal Rule of Civil Procedure 12(f), a court may strike "a counterclaim that is predicated on the same grounds as an insufficient defense." <u>See</u> 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1381. Even if the Court were to construe SFO's motion as a motion to strike and apply the motion to strike standard to McCullar's counterclaims, the result would not change. The allegations supporting McCullar's counterclaims for fraud, breach of contract, and breach of fiduciary duty are substantively identical to those supporting his affirmative defenses based on fraud, breach of contract, and breach of fiduciary duty. (<u>Compare</u> Am. Counter Compl. ¶¶ 25-29, ECF No. 19, <u>with</u> Am. Answer ¶¶ 13, 17-19, ECF No. 19.) McCullar's memoranda do not distinguish between his arguments that fraud, breach of contract, and breach of fiduciary duty constitute affirmative defenses to his liability to SFO and his arguments that they constitute counterclaims against SFO. (<u>See</u> Resp. to Defenses; Def.'s Surreply to Defenses.) For the reasons McCullar's arguments do not support affirmative defenses against SFO, they do not support counterclaims against SFO. If the Court were to construe SFO's motion as a motion to strike and not a motion to dismiss, the Court would strike McCullar's counterclaims for fraud, breach of contract, and breach of fiduciary duty in their entirety for the reasons it strikes his affirmative defenses. <u>See</u> 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1381.

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike "is the primary procedure for objecting to an insufficient defense." Regions Bank v. SoFHA Real Estate, Inc., No. 2:09-CV-57, 2010 WL 3341869, at *12 (E.D. Tenn. Aug. 25, 2010) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (3d ed. 1998)). Generally, "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." Lawrence v. Chabot, 182 F. App'x 442, 456 (6th Cir. 2006) (internal quotation marks and citation omitted); see also Agfa Photo USA Corp. v. Parham, No. 1:06-cv-216, 2007 WL 776503, at *3 (E.D. Tenn. Mar. 9, 2007) (noting that "the general rule is that an affirmative defense may be pled in general terms and will survive a motion to strike as long as it gives the plaintiff fair notice of the nature of the defense") (internal quotation marks and citation omitted). A defense is insufficient "if as a matter of law, the defense cannot succeed under any circumstances." S.E.C. v. Thorn, No. 2:01-CV-290, 2002 WL 31412440, at *2 (S.D. Ohio Sept. 30, 2002) (quoting Ameriwood Ind. Int'l Corp. v. Arthur Andersen & Co., 961 F. Supp. 1078, 1083) (W.D. Mich. 1997) (internal quotation marks

14

omitted); <u>cf.</u> <u>Regions Bank</u>, 2010 WL 3341867, at *12 ("It has been recognized, however, that if a defendant's affirmative defense cannot withstand a Rule 12(b)(6) challenge, the defense may be stricken as legally insufficient.") (citations omitted).

District courts have discretion in determining whether to grant a motion to strike. <u>See</u> <u>Seay v. Tenn. Valley Auth.</u>, 339 F.3d 454, 480 (6th Cir. 2003) (stating that appellate review of a motion to strike affirmative defenses is for abuse of discretion); <u>see</u> <u>also</u> <u>Gen. Electric Capital Corp. v. Lanmann</u>, No. 2:05-CV-1130, 2006 WL 2077103, at *2 (S.D. Ohio July 24, 2006) (stating that whether to strike an affirmative defense is "wholly discretionary"). A motion to strike may be granted "if it aids in eliminating spurious issues before trial, thereby streamlining the litigation." <u>Thorn</u>, 2002 WL 31412440, at *2 (quoting <u>Ameriwood</u>, 961 F. Supp. at 1083).

## 2. Motion to Dismiss

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. <u>League of United Latin Am. Citizens v. Bredesen</u>, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563

15

(2007).  This standard requires more than bare assertions of legal conclusions.  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Id. (citing Twombly, 550 U.S. at 555).  Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949 (citation omitted).  A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery."  Id. at 1950.  The standard applicable to a motion to dismiss a plaintiff's claims also applies to a defendant's counterclaims.  See, e.g., Weakley

16

<u>Cnty. Bd. of Educ. v. H. M.</u>, No. 08-1254, 2009 WL 3064885, at *4
(W.D. Tenn. Sept. 21, 2009).

### B. Affirmative Defenses & Counterclaims

McCullar pleads as affirmative defenses: 1) Starnes'
incompetence, 2) SFO's lack of capacity, 3) breach of contract,
4) breach of fiduciary duty, 5) fraud, 6) estoppel and waiver,
and 7) SFO's lack of "holder in due course" status. (<u>See</u> Am.
Answer ¶¶ 12-19.) McCullar also asserts counterclaims for
fraud, breach of contract, and breach of fiduciary duty. (<u>See</u>
Am. Counter Compl. ¶¶ 25-29.) McCullar does not distinguish
between his arguments that fraud, breach of contract, and breach
of fiduciary duty constitute affirmative defenses to his
liability to SFO and his arguments that they constitute
counterclaims against SFO. (<u>See</u> Resp. to Defenses; Def.'s
Surreply to Defenses.) Therefore, Court will analyze the
arguments together. In doing so, however, the Court applies the
motion-to-strike standard to the affirmative defenses and the
motion-to-dismiss standard to the counterclaims.

### 1. Starnes' Competence

McCullar asserts as an affirmative defense that Starnes is
incompetent under Tennessee law, that he is incapable of
performing his purported role with SFO, and that he "is
therefore being used to effect[] and commit fraud against
McCullar." (Am. Answer ¶ 16.)

17

An affirmative defense is an "assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." Black's Law Dictionary (9th ed. 2009); see Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003) ("An affirmative defense is defined as [a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true.") (quoting Black's Law Dictionary 430 (7th ed. 1999) (internal quotation marks omitted); cf. Ford Motor Co. v. Transport Indem. Co., 795 F.2d 538, 546 (6th Cir. 1986) (explaining that, rather than "negate an element of the plaintiff's prima facie case," an "affirmative defense raises matters extraneous to the plaintiff's prima facie case") (citations omitted); see also Hannan v. Alltel Publishing Co., 270 S.W.3d 1, 6 (Tenn. 2008) (explaining that the "most commonly understood definition" of affirmative defense is a "matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it") (citations omitted).

McCullar does not direct the Court to any authority for the proposition that Starnes' competence is, in and of itself, an affirmative defense that would relieve McCullar of his obligations under the Notes. Instead, he directs the Court to the Tennessee standard for determining competency and states

18

that "Starnes' competency is clearly an issue in this case which must be determined by the trier of fact." (Resp. to Defenses 11.) Starnes' competence may be relevant to other affirmative defenses available to McCullar. Even if Starnes were adjudged incompetent, however, that fact, standing alone, would not relieve McCullar of liability under the Notes. Therefore, it does not constitute an affirmative defense. See Saks, 316 F.3d at 350; cf. Ford Motor Co., 795 F.3d at 546; see also Hannan, 270 S.W.3d at 6. Because a defense based solely on Starnes' competence "cannot succeed under any circumstances," the Court STRIKES McCullar's affirmative defense based on Starnes' competence. See Thorn, 2002 WL 31412440, at *2.

### 2. SFO's Capacity to Sue

McCullar asserts as an affirmative defense that, because SFO is being used for an improper purpose and to perpetrate fraud, its corporate status should be ignored and it lacks the capacity to sue. (Am. Answer ¶ 17.) Under Tennessee law, a court may disregard an entity's form to hold "the true owners of the entity . . . liable when the corporation is liable for a debt but is without funds due to some misconduct on the part of the officers and directors." Muroll Gesellschaft M.B.H. v. Tenn. Tape, Inc., 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995) (citing Anderson v. Durbin, 740 S.W.2d 417, 418-19 (Tenn. Ct. App. 1987)). That doctrine, known as "piercing the corporate

19

veil," also applies to a Tennessee limited liability company ("LLC"). Canter v. Ebersole, No. E2005-02388-COA-R3-CV, 2006 WL 1627288, at *1 n.5 (Tenn. Ct. App. May 13, 2006) (noting that the Tennessee Court of Appeals "has affirmed application of veil piercing to disregard the existence of an LLC") (citation omitted); see Forrest Constr. Co., LLC v. Laughlin, No. M2008-01566-COA-R3-CV, 2009 WL 4723365, at *18 (Tenn. Ct. App. Dec. 9, 2009) (acknowledging that an LLC's corporate veil may be pierced by noting that a trial court had failed to make findings on that issue); cf. ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 27 (Tenn. Ct. App. 2005) (explaining that, because an LLC is a hybrid business entity with aspects of a partnership and a corporation, "where the characteristic originated from the corporate aspects of the LLC, the court will utilize the established princip[le]s and precedent of corporate law to resolve the issue").

Courts have used broad language when deciding whether to pierce the corporate veil. See Lindsey, Bradley & Malloy v. Media Mktg. Sys., Inc., No. E2000-00678-COA-R3-CV, 2000 WL 1875882, at *4 (Tenn. Ct. App. Dec. 15, 2000) (stating that "one may . . . challenge the corporate entity by showing that he has been the victim of some basically unfair device by which the corporate form of business organization has been used to achieve an inequitable result"); Schlater v. Haynie, 833 S.W.2d 921, 925

20

(Tenn. Ct. App. 1992) ("The separate identity of a corporation may be disregarded upon a showing that it is a sham or a dummy or where necessary to accomplish justice.").

Despite their expansive language, Tennessee courts have generally applied the doctrine in a single context—to permit a plaintiff to recover from a corporation's directors, officers, or shareholders when the corporation is unable to fulfill an obligation due to their misconduct.  See Lindsey, Bradley & Malloy, 2000 WL 1875822, at *4 (concluding that genuine issues of fact existed about whether directors and officers should be held personally liable for a corporation's debts); Schlater, 833 S.W.2d at 926 (concluding that the record did not support holding shareholders liable for a corporation's debts). Tennessee courts have "implicitly recognized that the corporate veil could be pierced in reverse" in the limited context of a parent-subsidiary relationship between two corporate entities. See S.E.A., Inc. v. Southside Leasing Co., No. E2000-00631-COA-R3-CV, 2000 WL 1449852, at *10 (Tenn. Ct. App. Sept. 29, 2000) (citing Cont'l Bankers Life Ins. Co. of the S. v. The Bank of Alamo, 578 S.W.2d 625, 632 (Tenn. 1979)).  The only court to consider whether to "pierce the corporate veil in reverse so as to make the corporation liable for the conduct of its majority shareholder" found no support for doing so under Tennessee law.

21

See id. (concluding that the trial court did not err in declining to pierce the corporate veil in reverse).

McCullar argues that, if Starnes is competent, he committed promissory fraud by entering into the Agreement without the intent to comply with it. (Resp. to Defenses 14.) McCullar alternatively argues that, if Starnes is incompetent, SFO is a sham entity whose very existence constitutes fraud by Starnes' representatives. (Id. at 15.) McCullar argues for piercing the corporate veil in reverse-ignoring the corporate aspect of SFO's legal form because of misconduct by Starnes or his representatives and imputing that misconduct to SFO itself. (See Id. at 14-15.)

McCullar's argument has no support in Tennessee law. Outside the parent-subsidiary context, there is no authority for piercing the corporate veil in reverse. See S.E.A., Inc., 2000 WL 1449852, at *10. Indeed, Tennessee courts have declined to disregard a corporation's legal personality based on a shareholder's misconduct. See id. There is no basis for disregarding SFO's legal personality based on the alleged misconduct of Starnes, a director and officer, or his representatives.

SFO's form cannot be ignored. For that reason, McCullar's defense based on SFO's lack of capacity "cannot succeed under

any circumstances," and the Court STRIKES that affirmative defense.  See <u>Thorn</u>, 2002 WL 31412440, at *2

### 3. Breach of Contract

McCullar asserts "breach of contract, both express and implied in fact", as an affirmative defense.  (Am. Answer ¶ 19.) He argues that, because the Agreement committed Starnes to service certain debt obligations of the Entities until the real estate market rebounded and because the Notes were "substituted" for those obligations, Starnes breached his contractual duty to McCullar under the Agreement.  (Resp. to Defenses 17–19.) McCullar alternatively argues that their course of dealings from 2003 to 2006 formed an enforceable contract (the "Implied Contract") committing Starnes to fund the Entities' liabilities in the event of a downturn, which Starnes breached by directing SFO to purchase the Notes and sue McCullar.  (<u>Id.</u> 19–21; <u>see also</u> Am. Counter Compl. ¶ 6.)

To be enforceable under Tennessee law, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." <u>Jane Doe, et al. v. HCA Health Services of Tennessee, Inc., d/b/a HCA Donelson Hospital</u>, 46 S.W.3d 191, 196 (Tenn. 2001).

Nothing in the facts alleged by McCullar suggests that SFO and McCullar engaged in the "meeting of the minds" required to form a valid contract under Tennessee law. See HCA Health Servs., 46 S.W.3d at 196. Rather, McCullar's contract-based defenses rest on the argument that SFO may be held liable for Starnes' contractual obligations because SFO's form must be ignored. Because SFO's form cannot be ignored, see supra Part III.B.2, SFO is a legal entity separate and apart from Starnes, see Schlater, 833 S.W.2d at 925 (explaining that, where the corporate veil is not pierced, "a corporation is a distinct entity, separate from its shareholders, officers, directors or affiliated corporations"). Even assuming the Notes were covered by the Agreement or the Implied Contract, those contracts would bind Starnes and McCullar but not SFO, a separate entity that was not a party to either contract.

Because SFO was not bound by the Agreement or the Implied Contract, it did not form a valid contract with McCullar. Even if the Court were to conclude that a valid contract existed between SFO and McCullar, a breach of that contract would not necessarily relieve McCullar of liability under the Notes and, therefore, would not constitute an affirmative defense. See Saks, 316 F.3d at 350; cf. Ford Motor Co., 795 F.3d at 546; see also Hannan, 270 S.W.3d at 6. For those reasons, McCullar's affirmative defense based on breach of contract "cannot succeed

24

under any circumstances." See Thorn, 2002 WL 31412440, at *2. Because McCullar's affirmative defense based on SFO's breach of contract is legally insufficient, the Court STRIKES that defense.

McCullar also asserts a counterclaim of "breach of contract, express and implied." (Am. Counter Compl. ¶ 29.) As noted, under Tennessee law a valid contract requires, inter alia, "a meeting of the minds of the parties in mutual assent to the terms." HCA Health Servs., 46 S.W.3d at 196. SFO and McCullar did not engage in the "meeting of the minds" necessary form a valid contract, see id., and because SFO was a separate entity, see Schlater, 833 S.W.2d at 925, neither the Agreement nor the Implied Contract between Starnes and McCullar would bind SFO. Because McCullar's counter complaint does not allege facts showing that an express or implied contract existed between SFO and McCullar, he has not alleged a claim for relief that is plausible on its face. See Iqbal, 129 S. Ct. at 1949. Therefore, that McCullar's counterclaim for breach of contract must be DISMISSED. See id. at 1950.

### 4. Breach of Duty

"McCullar asserts the affirmative defense of breach of fiduciary duty." (Am. Answer ¶ 18.) McCullar argues that, because he and Starnes were partners in at least two of the Entities, "they owed each other a fiduciary duty with respect to

25

the subject matter of the partnership, i.e., the assets and liabilities of the partnership[]," including their debt obligations.  (Resp. to Defenses 21.)

Under Tennessee law, "the relationship of partners is fiduciary and imposes on them the obligation of the utmost good faith and integrity in their dealings with one another with respect to partnership affairs." Lightfoot v. Hardaway, 751 S.W.2d 844, 849 (Tenn. Ct. App. 1988).  A partnership is "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit."  Tenn. Code. Ann. § 61-1-101(6).  A partnership is formed when at least two people "place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them." Bass v. Bass, 814 S.W.2d 38, 41 (Tenn. 1991).

McCullar does not argue that the facts alleged show that he and SFO formed a partnership.  (See Resp. to Defenses 21-22.) Instead, he argues that Starnes had a fiduciary duty to him, which Starnes violated "using the subterfuge of SFO." (Id. 22.) Although the facts alleged show that McCullar and Starnes formed partnerships, the corporate aspect of SFO's personality cannot be ignored.  See supra Part III.B.2.  Even if the Court were to conclude that Starnes had a fiduciary duty to McCullar, that duty would not be shared by SFO.

Because the facts alleged do not show that SFO and McCullar shared money, assets, labor, or skill, there is no basis for concluding that SFO had a fiduciary duty to McCullar.  See Bass, 814 S.W.2d at 41.  Even if the Court were to conclude that SFO owed McCullar a fiduciary duty, a breach of that duty would not necessarily relieve McCullar of liability under the Notes and, therefore, would not constitute an affirmative defense.  See Saks, 316 F.3d at 350; cf. Ford Motor Co., 795 F.3d at 546; see also Hannan, 270 S.W.3d at 6.  For those reasons, McCullar's affirmative defense based on breach of duty "cannot succeed under any circumstances."  See Thorn, 2002 WL 31412440, at *2. Because McCullar's affirmative defense based on SFO's breach of fiduciary duty is legally insufficient, the Court STRIKES that defense.

McCullar also asserts a counterclaim of breach of fiduciary duty.  (Am. Counter Compl. ¶ 29.)  Tennessee law imposes on partners a fiduciary duty to act in good faith toward each other and the partnership assets.  See Lightfoot, 751 S.W.2d at 849. Even assuming that Starnes had a fiduciary duty to McCullar, because SFO is a separate legal entity, that duty would not bind SFO.  See supra Part III.B.2.  The facts alleged do not show that McCullar and SFO "place[d] their money, assets, labor, or skill in commerce with the understanding that profits [would] be shared between them."  See Bass, 814 S.W.2d at 41.  Because

27

McCullar's counter complaint does not allege facts showing that an express or implied partnership existed between SFO and McCullar, he has not shown that SFO owed him a fiduciary duty. See id. Therefore, McCullar's counterclaim claim for breach of duty is not plausible on its face and must be DISMISSED. See Iqbal, 129 S. Ct. at 1949.

### 5. Fraud

McCullar asserts fraud as an affirmative defense. (Am. Answer ¶ 12.) SFO argues that the facts alleged do not show any acts on the part of SFO that constitute fraud. (Mot. to Strike Defenses 15-16.) McCullar argues that, if Starnes is competent, he committed promissory fraud by entering into the Agreement and the Implied Contract without the intent to comply with them. (Id. Resp. to Defenses 14.) McCullar alternatively argues that, if Starnes is incompetent, SFO is a sham entity whose very existence constitutes fraud by Starnes' representatives. (Id. 15.)

Under Tennessee law, the basic elements of fraud are: 1) an intentional misrepresentation about a material fact, 2) knowledge of the representation's falsity, 3) that the person claiming fraud reasonably relied on the misrepresentation and suffered damages, and 4) that the misrepresentation relates to an existing or past fact or, if the claim involves promissory fraud, that it embodies a promise of future action without the

28

present intention to carry out the promise. Carter v. Patrick, 163 S.W.3d 69, 77 (Tenn. Ct. App. 2004) (citing Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990); see Black v. Black, 166 S.W.3d 699, 705 (Tenn. 2005). Even assuming that the facts alleged show Starnes was competent and that he entered into the Agreement and the Implied Contract without the intent to honor them, those facts would not show fraud by SFO. As noted, SFO is a legal entity separate and apart from Starnes. See supra Part III.B.2. Fraud by Starnes does not constitute fraud by SFO, and only the latter is the plaintiff in this action.

McCullar's alternative arguments also fail. He argues that, if Starnes was incompetent, but was installed as an officer of SFO and as CEO of its managing entity, SFO Management, that arrangement demonstrates that "neither entity is what it purports to be" and that both entities are "shams." (Resp. to Defenses 15.) However, that argument does not claim any misrepresentation by SFO, a necessary element of fraud. See Carter, 163 S.W.3d at 77. McCullar also impliedly argues that the Agreement constitutes a misrepresentation by SFO. (See Def.'s Surreply to Defenses 7.) SFO was created on April 6, 2009. (Am. Answer ¶ 21.) It did not exist when Starnes and McCullar formed the Agreement. (See id. ¶¶ 11, 21.) The Agreement cannot constitute a misrepresentation by SFO. Even if

the facts alleged could be construed to show a misrepresentation by SFO, they would not suggest that McCullar reasonably relied on that misrepresentation or that SFO intended to deceive him, two other required elements of fraud.  See Carter, 163 S.W.3d at 77.

Because the facts alleged do not show that SFO's actions constitute fraud, McCullar's fraud-based affirmative defense "cannot succeed under any circumstances."  See Thorn, 2002 WL 31412440, at *2.   Therefore, the Court STRIKES McCullar's affirmative defense based on fraud by SFO.

McCullar also alleges a counterclaim for fraud.   (Am. Counter Compl. ¶¶ 25-28.)  McCullar argues that, if Starnes is competent, SFO acted "fraudulently" by purchasing the Notes and suing him, despite the Agreement and the Implied Contract with Starnes.  (Id. ¶ 26.)  McCullar alternatively argues that, if Starnes is incompetent, Starnes' representatives did not intend to comply with the Agreement when it was signed, caused SFO to purchase the Notes, and sued McCullar.  (Id. ¶ 27.)  He also argues that, if Starnes is incompetent, SFO's "arrangement is clearly improper and fraudulent because it was designed to create the false appearance that Starnes plays a central role in SFO's operation and management."  (Id. ¶ 28.)

To state a claim for fraud under Tennessee law, a plaintiff must alleges, inter alia, an intentional misrepresentation about

a material fact.  See Carter, 163 S.W.3d at 77; see also Black, 166 S.W.3d at 705.  McCullar does not allege that SFO made a misrepresentation.  Although he implies that the Agreement constitutes a misrepresentation by SFO, SFO was created on April 6, 2009.  (Am. Answer ¶ 11.)  It did not exist when Starnes and McCullar formed the Agreement, and the Agreement cannot constitute a misrepresentation by SFO.  (See Am. Answer ¶¶ 11, 21.)  Because McCullar's counter complaint does not allege facts showing a misrepresentation by SFO, his counterclaim for fraud is not plausible on its face.  See Iqbal, 129 S. Ct. at 1949. Therefore, McCullar's counterclaim for fraud must be DISMISSED.

### 6. Estoppel and Waiver

McCullar asserts the affirmative defenses of estoppel and waiver.  (Am. Answer ¶¶ 14-15.)  SFO argues that the facts alleged show no basis for estoppel or waiver, while McCullar argues that they show a "textbook example of a case where the doctrines . . . should be invoked to prevent wrongdoing." (Compare Mot. to Strike Defenses 18, with Resp. to Defenses 23.)

Under Tennessee law, "[t]he essential elements of the defenses of implied waiver and equitable estoppel are one and the same."  Island Brook Homeowners Ass'n v. Aughenbaugh, No. M2006-02317-COA-R3-CV, 2007 Tenn. App. LEXIS 635, at *10 (Tenn. Ct. App. Oct. 5, 2007) (citing Chattem, Inc. v. Provident Life &

_Accident Ins. Co._, 676 S.W.2d 953, 955 (Tenn. 1984)).  Those

elements:

> as related to the party estopped are said to be (1)
> Conduct which amounts to a _false representation or_
> _concealment of material facts_, or, at least, which is
> calculated to convey the impression that the facts are
> otherwise than, and inconsistent with, those which the
> party subsequently attempts to assert; (2) Intention,
> or at least expectation that such conduct shall be
> acted upon by the other party; (3) Knowledge, actual
> or constructive, of the real facts. As related to the
> party claiming the estoppel they are: (1) Lack of
> knowledge and of the means of knowledge of the truth
> as to the facts in question; (2) _Reliance upon the_
> _conduct of the party estopped_; and (3) Action based
> thereon of such a character as to change his position
> prejudicially.

_Id._ (citing _Callahan v. Town of Middleton_, 292 S.W.2d 501, 508

(Tenn. 1954)) (emphasis added).

McCullar argues that the facts alleged give rise to the

defenses of estoppel and waiver because he "agreed to co-sign

the [N]otes in reliance on Starnes' prior representations in the

[Implied Contract] and Agreement."  McCullar argues that Starnes

violated the Implied Contract and the Agreement "through the

subterfuge of SFO."  (Resp. to Defenses 23.)  SFO is a separate

legal entity that did not exist at the time of the Agreement or

the Implied Contract.  See _supra_ Part III.B.2.  For that reason,

the Agreement, the Implied Contract, and any alleged statements

by Starnes cannot be imputed to SFO.

McCullar does not argue or allege that SFO made any

statement that could be considered a "false representation or

32

concealment of material facts." See <u>Island Brook Homeowners</u>, 2007 Tenn. App. LEXIS 635, at *10. Because the facts alleged show no statements by SFO to McCullar, much less reliance by McCullar on those statements, his estoppel-based defense "cannot succeed under any circumstances." See <u>Thorn</u>, 2002 WL 31412440, at *2. Therefore, the Court STRIKES McCullar's affirmative defense based on estoppel and waiver.

### 7. Holder in Due Course

McCullar asserts as an affirmative defense that SFO is not a holder in due course because it acted in bad faith when purchasing the Notes from Independent Bank. (Am. Answer ¶ 12.) SFO alleges that it purchased the Notes "for value, in good faith, prior to the date payment was due and without notice of any defense thereon" and argues that McCullar "misapplies the principle attendant to a holder in due course." (Compl. ¶ 6; Mot. to Strike Defenses 5 n.1.)

Under Tennessee law, a person possessing an instrument is a holder in due course if, <u>inter</u> <u>alia</u>, the person took the instrument "in good faith." Tenn. Code Ann. § 47-3-302(a)(2). For purposes of that provision, "good faith" is "honesty in fact in the conduct or transaction concerned." <u>Id.</u> § 47-1-201(b)(20). That definition "means that unless the conduct amounts to dishonesty and bad faith, in fact, due course holder status is not lost." <u>Third Nat'l Bank in Nashville v. Hardi-</u>

Gardens Supply of Ill., Inc., 380 F. Supp. 930, 940-41 (M.D. Tenn. 1974).

McCullar argues that SFO acted in bad faith based on alternative theories. (Resp. to Defenses 16-17.) He argues that, if Starnes is competent, Starnes is "using the artifice of SFO to purchase the notes to sue McCullar," in "violation of his fiduciary duty." (Id. at 17.) McCullar alternatively argues that, if Starnes is incompetent, "a dummy corporation has been created, using Starnes as a virtual prop, in order to purchase the notes and sue McCullar, in direct violation of" the Agreement and the Implied Contract. (Id.) The essence of McCullar's arguments is that, because of actions by Starnes or his representatives, SFO did not take the Notes in good faith. (See id. at 16-17.)

McCullar's arguments do not show any bad faith by SFO. Even assuming that Starnes owed McCullar a fiduciary duty and that he or his representatives breached that duty, those facts would not show SFO acted dishonestly or in bad faith in its purchase of the Notes from Independent Bank, the "conduct or transaction concerned." See Tenn. Code Ann. § 47-1-201(b)(20); Third Nat'l Bank in Nashville, 380 F. Supp. at 940-941. Similarly, even assuming that the Agreement or the Implied Contract covered the Notes and that Starnes or his representatives breached one or both contracts, those facts

34

would not show SFO acted dishonestly or in bad faith in its purchase of the Notes from Independent Bank, the "conduct or transaction concerned." See Tenn. Code Ann. § 47-1-201(b)(20); Third Nat'l Bank in Nashville, 380 F. Supp. at 940-941. SFO is a separate legal entity. Because bad faith by Starnes or his representatives cannot be imputed to SFO, McCullar's affirmative defense must fail.

McCullar's affirmative defense fails for another reason. Under Tennessee law, the holder in due course of an instrument may enforce that instrument regardless of "defenses available against original parties to the instrument." State Res. Corp. v. Talley, No. W2003-01775-COA-R3-CV, 2004 WL 1274388, at *2 (Tenn. Ct. App. June 9, 2004) (citations omitted); see Tenn. Code Ann. § 47-3-306. However, McCullar does not allege any plausible defenses to payment on the Notes against Independent Bank, the original payee. Even if SFO were not a holder in due course, that fact would not relieve McCullar of liability on the Notes. Therefore, it does not constitute an affirmative defense. See Black's Law Dictionary (9th ed. 2009) (defining an "affirmative defense" as an "assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true").

McCullar's defense that SFO is not a holder in due course "cannot succeed under any circumstances." See Thorn, 2002 WL

35

31412440, at *2.   Because McCullar's affirmative defense is insufficient, the Court STRIKES McCullar's holder-in-due-course affirmative defense.

Based on the foregoing, McCullar's affirmative defenses are insufficient because they cannot succeed under any circumstances.   See Fed. R. Civ. P. 12(f); Thorn, 2002 WL 31412440, at *2.   None of McCullar's counterclaims states a plausible claim for relief against SFO.   See Iqbal, 129 S. Ct. at 1949.   The Court GRANTS SFO's Motion to Strike Affirmative Defenses and Counter Claim.   The Court STRIKES McCullar's affirmative defenses and DISMISSES McCullar's counterclaims against SFO.

**IV.  Motion to Strike Jury Demand**

In his Answer, McCullar "demands a jury to try all issues in this case." (Am. Answer ¶ 19.)  SFO has moved to strike that demand based on the jury waiver provision in the Notes.  (See Mot. to Strike Jury Demand 1-2.)

A motion to strike a jury demand is properly brought under Rule 12(f).  See, e.g., Richie v. Hartford Life and Acc. Ins. Co., No. 2:09-cv-00604, 2010 WL 785354, at *1, 8 (S.D. Ohio March 5, 2010).  Although the Court's jurisdiction is based on diversity of citizenship, federal law determines whether a person has waived his right to a jury trial through a contractual provision.  See K.M.C. Co., Inc. v. Irving Trust

36

Co., 757 F.2d 752, 755 (6th Cir. 1985) (applying federal standard in a diversity action).

The Seventh Amendment to the United States Constitution guarantees a right to a jury trial where legal rights are asserted. See U.S. Const. amend. VII; Golden v. Kelsey-Hayes, 73 F.3d 648, 659 (6th Cir. 1996). Parties to a contract may waive their jury right by prior written agreement. See K.M.C. Co., 757 F.2d at 755 (citations omitted). However, any waiver of that right must be knowing and voluntary. See id. at 756.

SFO argues in favor of striking McCullar's jury demand because he contractually waived that right when he executed the Notes. (See Mot. to Strike Jury Demand 1-2.) The Notes contain a clause in which the parties "waive the right to any jury trial in any action, proceeding, or counterclaim brought by [either] against the other." (Ex. A., at 3; Ex. B., at 3, ECF No. 1-2.) McCullar acknowledges that he executed the Notes containing the waiver clause, but argues that, because SFO has "unclean hands" the waiver should not be enforced and that, regardless, the waiver does not apply to his counterclaims. (See Resp. to Jury Demand 8-10.)

McCullar does not direct the Court to any Sixth Circuit authority for the proposition that a party may avoid the contractual waiver of a jury trial based on the "unclean hands" doctrine. Even if that doctrine applied, the facts alleged do

37

not show that SFO's hands are unclean.  Therefore, the McCullar cannot escape the jury waiver based on the "unclean hands doctrine."  McCullar is also unable to avoid the jury waiver because he asserts counterclaims.  Because the Court has dismissed McCullar's counterclaims against SFO, that argument is moot.  See supra Part III.C.  McCullar does not contest the fact that he executed the Notes.  He is presumed under Tennessee law to know their contents.  His attempt to avoid the jury waiver in the Notes is not well-taken.  Therefore, the Court GRANTS SFO's Motion to Strike McCullar's jury demand.

## V.   Motion to Dismiss Third Party Complaint

McCullar's third-party complaint against Starnes alleges fraud, breach of contract, breach of fiduciary duty, and right to indemnification.  (See Am. Third Party Compl. ¶¶ 8-17.) Starnes has moved to dismiss, arguing that impleader is not proper under Rule 14.[3]  (See Mot. to Dismiss.)  The court applies

---

[3] As a threshold issue, McCullar argues that Starnes' motion is not properly before the Court because Starnes seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), but his motion to dismiss refers to Federal Rule of Civil Procedure 14.  (See Meredith McCullar's Resp. in Opp'n to Pl.'s and Third Party Def.'s Mot. to Dismiss Third Party Compl. 8, ECF No. 18; see also Mot. to Dismiss 1.)  Starnes styles his motion a "Motion . . . to Dismiss Third Party Complaint" and moves "pursuant to Rule 14 of the Federal Rules of Civil Procedure and other applicable provision of law."  (See Mot. to Dismiss 1.) District courts in the Sixth Circuit have broadly construed similar motions. See, e.g., Rowe v. Rembco Geotechnical Contractors, Inc., No. 3:10-CV-164, 2010 WL 2812946, at *2 (E.D. Tenn. July 15, 2010) (noting that district courts "have adopted a liberal approach to the labeling of [motions to dismiss], so as not to elevate form over substance").  Because Starnes' motion is styled a "Motion to Dismiss," and he refers to Rule 14 and "other applicable provision of law," the Court construes it as a motion to dismiss under Rule 12(b)(6).

the standard of review for motions to dismiss discussed above. See supra Part III.A.2.

Federal Rule of Civil Procedure 14 governs third-party practice. See Fed. R. Civ. P. 14. Under Rule 14(a)(1), a defendant "may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Id. 14(a)(1). Rule 14 exists to promote judicial efficiency and avoid duplicative actions. See Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co., 512 F.3d 800, 805 (6th Cir. 2008) ("The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit.") (citation omitted).

Under Rule 14, a defendant's ability to implead a third-party defendant is limited. See id. (citation omitted).

> Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the essential criterion of a third-party claim.

Id. A third-party complaint cannot "be founded on a defendant's independent cause of action against a third-party defendant, even though arising out of the same occurrence

39

underlying plaintiff's claim." Id. (citing United States v. Olavarrieta, 812 F.2d 640, 643 (11th Cir. 1987)). Rather, "a third-party complaint must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant." Id.

According to Starnes, McCullar's third-party complaint alleges independent claims for breach of contract, breach of fiduciary duty, and fraud, arising out of arrangements independent of the Notes, like the Agreement and the Implied Contract. (See id. 10.) District courts in this circuit that have considered similar claims have concluded they are independent claims. See, e.g., Presidential Facility, LLC v. Debbas, No. 09-12346, 2010 U.S. Dist. LEXIS 93108, at *18-22 (E.D. Mich. Sept. 8, 2010); Ohio Farmers Ins. Co. v. Special Coatings, L.L.C., No. 3:07-1224, at *38-47, 2008 U.S. Dist. LEXIS 103685 (M.D. Tenn. Dec. 23, 2008).

In Presidential Facility, a plaintiff who was required to make payments on a bank loan he had guaranteed for a business venture sued defendants who had agreed to reimburse him for those payments under a separate agreement. See Presidential Facility, 2010 U.S. Dist. LEXIS 931018, at *2. One of the defendants, Pinkas, filed a third-party complaint against a number of third-party defendants, including another party to the agreement that obligated Pinkas to reimburse the plaintiff. Id.

at *3-4.  The district court concluded that Pinkas' third-party claims for fraud and breach of contract were not proper under Rule 14 because "if Pinkas [were] found liable to Plaintiff for breach of the Agreement, success on [those counts] of the amended third-party complaint would in no way shift that liability."  Id. at *20.

Similarly, in Ohio Farmers, a plaintiff surety company sued the Godwins and other defendants to recover under a written indemnity agreement.  See 2008 U.S. Dist. LEXIS 103685, at *2-3. The Godwins filed a third-party complaint against an insurance agent involved in the deal, Morrison, alleging that, but for his negligence, the indemnity agreement would have been terminated. Id. at *2-3, 40-41.  The district court concluded that the Godwins' negligence claim would not make Morrison derivatively liable to the plaintiff, but directly liable to them.  Id. at *42 (explaining that "the Godwins cannot pass that indemnity liability to Morrison by raising an independent claim of negligence against Morrison that could be pursued in a separate case").

Like the would-be third-party plaintiffs in Presidential Facility and Ohio Farmers, McCullar has been sued on financial obligations.  See Presidential Facility, 2010 U.S. Dist. LEXIS 931018, at *2; Ohio Farmers, 2008 U.S. Dist. LEXIS 103685, at *2-3; (Compl. ¶¶ 5-8).  Like those would-be third-party

41

plaintiffs, McCullar has alleged that a third-party, Starnes, committed various legal violations for which he should compensate McCullar. See Presidential Facility, 2010 U.S. Dist. LEXIS 931018, at *2; Ohio Farmers, 2008 U.S. Dist. LEXIS 103685, at *2-3; (Third Party Compl. ¶¶ 8-17). However, if McCullar were found liable to SFO, McCullar's claims against Starnes "would in no way shift that liability." See Presidential Facility, 2010 U.S. Dist. LEXIS 931018, at *2. Like the third-party claims in Presidential Facility and Ohio Farmers, McCullar's claims against Starnes are independent claims "that could be pursued in a separate case." See Ohio Farmers, 2008 U.S. Dist. LEXIS 103685. Therefore, McCullar's claims for fraud, breach of contract, and breach of fiduciary duty are not appropriate under Rule 14(a). The Court GRANTS Starnes' motion to dismiss those claims.

Although McCullar impliedly acknowledges that his other claims might be independent, he argues that his indemnification claim is derivative. (Resp. to Dismiss 9-10.) A claim for indemnification is proper under Rule 14(a). See Wells Fargo Bank v. Gilleland, 621 F. Supp. 2d 545, 547 (N.D. Ohio 2009) ("By its own language, Rule 14 requires an indemnity claim in order to bring in a third-party defendant whereby the defendant is attempting to transfer liability from himself to a third-party defendant in the event he is found to be liable to the

plaintiff.") (citing <u>Am. Zurich Ins. Co.</u>, 512 F.3d at 805); <u>see also</u> <u>Trs. of the Sheet Metal Workers Local Union No. 80 Pension Trust Fund v. W.G. Heating & Cooling</u>, 555 F. Supp. 2d 838, 849 (E.D. Mich. 2008) ("This is essentially a request for indemnification, and the harm alleged is only made real if the plaintiff succeeds in its case for withdrawal liability. Therefore, the Court must reject the plaintiff's argument that the third-party complaint fails to comply with Rule 14(a)."); <u>cf.</u> <u>Presidential Facility</u>, 2010 U.S. Dist LEXIS 93108, at *21-22 (concluding that, unlike third-party plaintiff's fraud and breach-of-contract claims, his contribution claim was properly brought under Rule 14(a).)

The essence of McCullar's indemnification claim is that, under the Agreement and the Implied Contract, Starnes is liable to McCullar for any amount McCullar might owe SFO under the Notes. (<u>See</u> Resp. to Dismiss 10; <u>see</u> <u>also</u> Am. Third Party Compl. ¶ 19.) That claim differs from his other third-party claims, because, if McCullar were found liable to SFO under the Notes, it would transfer that liability to Starnes. Because indemnification "is the quintessential third-party claim contemplated by Rule 14(a)," Starnes' argument in favor of dismissing McCullar's indemnification claim is not well-taken. <u>See</u> <u>Nationwide Mut. Ins. Co. v. Bridgestreet Corporate Hous. LLC</u>, No. 2:09-cv-957, 2010 U.S. Dist. LEXIS 106177, at *12 (S.D.

Ohio Oct. 5, 2010). Therefore, Starnes' motion to dismiss is DENIED as to that claim.

For the foregoing reasons, Starnes' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. McCullar's third-party claims against Starnes for fraud, breach of contract, and breach of fiduciary duty are DISMISSED.

## VI. Motion to Strike Competence Allegations

Starnes and SFO have jointly moved to strike factual allegations about Starnes' competence, arguing that they are immaterial to the defenses and claims McCullar has pled. (Mot. to Strike Allegations 6-7.)

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). When a party seeks to use that rule to strike factual allegations from a pleading, he must show that they have "no possible relation to the controversy." Parlak v. U.S. Immigration and Customs Enforcement, No. 05-2003, 2006 WL 3634385, at *1 (6th Cir. April 27, 2006) (internal quotation marks omitted) (quoting Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953)); see also 5C Wright & Miller, Federal Practice & Procedure § 1382 (explaining that "there appears to be general judicial agreement" that motions to strike factual allegations "should be denied unless

44

the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action"). Where the challenged allegations "might serve to achieve a better understanding of the . . . claim for relief or perform some other useful purpose in promoting the just and efficient disposition of litigation," a motion to strike should be denied. See Sherrills v. Beison, No. 1:05-CV-310, 2005 WL 1711132, at *1 (W.D. Mich. July 21, 2005) (citations omitted).

McCullar concedes that, even if Starnes is incompetent, he does not challenge the authority of Starnes' agents and representatives. (Resp. to Allegations 10.) However, he has alleged alternative theories for his defenses and claims, depending on whether Starnes is competent. (Id. 11-13.) The Court has concluded that one of McCullar's third-party claims against Starnes survives the motions now before the Court. The allegations about Starnes' competence may prove to be irrelevant, but the Court cannot conclude that they have "no possible relation to the controversy." See Parlak, 2006 WL 3634385, at *1. The allegations may assist the Court in understanding McCullar's third-party claim as this case moves forward. See Sherrills, No, 2005 WL 1711132, at *1. For those

reasons, the motion to strike allegations related to Starnes'
competence is DENIED.

### VII. Conclusion

For the foregoing reasons, SFO's Motion to Strike
Affirmative Defenses and Counter Claim is GRANTED. McCullar's
affirmative defenses are STRICKEN, and McCullar's counterclaims
against SFO are DISMISSED.

SFO's Motion to Strike Jury Demand is GRANTED.

Starnes' Motion to Dismiss Third Party Complaint is GRANTED
IN PART and DENIED IN PART. All third-party claims other than
McCullar's claim for indemnification are DISMISSED.

The Joint Motion to Strike Allegations Regarding Starnes'
Competence filed by SFO and Starnes is DENIED.

So ordered this 28th day of January, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE