IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| STARNES FAMILY OFFICE, LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  10-2186 |
| | ) | |
| MEREDITH McCULLAR, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MEREDITH McCULLAR, | ) | |
| | ) | |
|     Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL S. STARNES, | ) | |
| | ) | |
|     Third-Party Defendant. | ) | |

---

| | | |
|---|---|---|
| MEREDITH McCULLAR, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  11-2262 |
| | ) | |
| MICHAEL S. STARNES, | ) | |
| | ) | |
|     Defendant. | ) | |

---

ORDER GRANTING MOTIONS FOR JUDGMENT ON THE PLEADINGS AND DENYING
MOTION TO CONSOLIDATE

---

This case arises from a business dispute.  There are three motions before the Court.  The first is Plaintiff Starnes Family

Office, LLC's ("SFO") February 7, 2011 Motion for Judgment on the Pleadings. (See Pl. Starnes Family Office, LLC's Combined Mot. and Mem. for J. on the Pleadings as to Def. Meredith McCullar's Liability on the Promissory Notes, ECF No. 42.[1]) ("SFO's Mot.") Defendant Meredith McCullar ("McCullar") responded in opposition on February 22, 2011. (See Resp. of Def., Meredith McCullar, to Starnes Family Office, LLC's Combined Mot. and Mem. on the Pleadings, ECF No. 45.) ("Resp. to SFO")

The second motion is Third-Party Defendant Michael S. Starnes' February 10, 2011 Motion for Judgment on the Pleadings as to McCullar's remaining claim against him. (See Third-Party Def. Michael S. Starnes' Combined Mot. and Mem. for J. on the Pleadings as to Sole Remaining Third-Party Claim, ECF No. 44) ("Starnes' Mot.") McCullar responded in opposition on February 24, 2011. (See Third-Party Pl. Meredith McCullar's Resp. to Michael S. Starnes' Mot. for J. on the Pleadings as to McCullar's Third Party Claim, ECF No. 46.) ("Resp. to Starnes") Starnes replied on March 7, 2011. (See Third-Party Def. Michael S. Starnes' Reply Mem. in Supp. of Mot. for J. on the Pleadings, ECF No. 47.) With leave of Court, McCullar filed a sur-reply on March 23, 2011. (See Surreply Br. of Meredith McCullar in Opp'n

---

[1] Unless otherwise stated, all docket numbers refer to the filings in Starnes Family Office, LLC v. McCullar, No. 10-2186.

to Mot. to Dismiss Third Party Compl., ECF No. 50; Order
Granting Mot. for Leave to File Surreply Br., ECF No. 49.)
After briefing on the motion had closed, both parties filed
supplemental memoranda with leave of Court. (See Meredith
McCullar's Supplemental Mem. in Opp'n to Michael S. Starnes'
Mot. for J. on the Pleadings, ECF No. 63 ("McCullar's
Supplemental Mem."); Third-Party Def. Michael S. Starnes'
Supplemental Mem. in Supp. of his Mot. for J. on the Pleadings
("Starnes' Supplemental Mem."); Order Granting Mot. for Leave to
Reopen Briefing, ECF No. 62.)

The third motion is McCullar's May 26, 2011 Motion to
Consolidate Starnes Family Office, LLC v. McCullar, No. 10-2186,
with a separate action he has filed against Starnes, which is
currently pending in this Court: McCullar v. Starnes, No. 11-
2262. (See Meredith McCullar's Mot. to Transfer and
Consolidate, ECF No. 54, ECF No. 12 in Case No. 11-2262.) SFO
and Starnes responded in opposition on June 7, 2011. (See
Combined Resp. and Mem. of Starnes Family Office, LLC and
Michael S. Starnes in Opp'n to Meredith McCullar's Mot. to
Transfer and Consolidate 4, ECF No. 58, ECF No. 14 in Case No.
11-2262.) ("Combined Resp. to Consolidation") McCullar replied
on July 6, 2011. (See Meredith McCullar's Reply Br. in Supp. of
Mot. to Consolidate 2, ECF No. 61, ECF No. 20 in Case No. 11-
2262.) ("Consolidation Reply")

For the following reasons, the Court GRANTS SFO's Motion for Judgment on the Pleadings, GRANTS Starnes' Motion for Judgment on the Pleadings, and DENIES McCullar's Motion to Consolidate.

I.   **Background[2]**

SFO alleges that, on November 26, 2008, McCullar executed two promissory notes in favor of Independent Bank of Memphis (the "Notes"): one in the amount of $2,000,000 and another in the amount of $1,000,500. (Compl. ¶ 5, ECF No. 1; Ex. A, ECF No. 1-1; Ex. B, ECF No. 1-2.)  The Notes are payable on demand or on November 25, 2009. (Compl. ¶ 5.)  Having purchased the Notes from Independent Bank, SFO seeks to collect on them. (Id. ¶ 6.)  The Notes have matured. (Id. ¶ 7.)  SFO alleges that Starnes was McCullar's co-maker on the Notes, that Starnes has satisfied his obligation, and that McCullar is liable to SFO for the balance, $1,500,250, plus interest. (Id. ¶ 7.)  McCullar has made no payments on the Notes. (Id. ¶ 8.)

In his counter complaint, McCullar alleges that Starnes and McCullar once had a functional business relationship.[3] (Am. Counter Compl. ¶ 2, ECF No. 19.)  Beginning in 2003, they formed

---

[2] Because the Court has previously summarized the relationships among the parties, it recites only the facts relevant to the motions now before the Court.  See Starnes Family Office, LLC v. McCullar, 765 F. Supp. 2d 1036, 1043–44 (W.D. Tenn. 2011).

[3] The Court relies on McCullar's amended counter complaint for the factual allegations because his third party complaint incorporates those allegations by reference. (See Am. Third Party Compl. ¶ 5, ECF No. 19.)

various business entities (the "Entities") for the purpose of engaging in real estate investment and management in and around Memphis, Tennessee. (Id. ¶ 2.) To that end, they secured lines of credit and real estate loans (the "Loans") that were secured by the Entities' real estate holdings and Starnes' personal guarantees. (Id. ¶ 5.) When the real estate market collapsed in 2007 and 2008, the Entities' holdings declined in value such that they were no longer sufficient to secure the Loans. (See id. ¶ 9.) McCullar alleges that, because he was unable to satisfy his portion of the Loans, the parties entered into an agreement on August 15, 2008 (the "Agreement"). (See id. ¶ 11.) Although McCullar asked to deal directly with Starnes, Raymond Blankenship ("Blankenship") and Robert Orians negotiated on behalf of Starnes and signed the Agreement as his attorneys-in-fact. (Id. ¶ 12.)

The Agreement states that the Entities have approximately $26.5 million in debt obligations (the "Obligations") and that they lack the capital to service the Obligations. (Id. ¶ 13; see also Ex. A at 1, ECF No. 6-1 ("Agreement").) It states that "McCullar has indicated that he is not capable, at this time, of funding his proportionate share of any capital contribution necessary to capitalize" the Entities and that "Starnes has agreed to finance the costs of funding the financial obligations of the Entities and River Tide for the time being, upon the

5

terms and subject to the conditions set forth herein." (See Am. Counter Compl. ¶ 13; Agreement 1.) The Agreement identifies the Obligations, including a line of credit with BankPlus. (See Agreement ¶ 1(a)(iv); Am. Counter Compl. ¶ 18.) McCullar alleges that, when BankPlus refused to restructure the Entities' debt, Blankenship arranged for Independent Bank of Memphis ("Independent Bank") to loan McCullar and Starnes approximately $3 million, which they used to satisfy the Entities' obligation to BankPlus. (See Am. Counter Compl. ¶ 18.) In return for that loan, McCullar and Starnes allegedly executed the Notes that are the subject of this litigation. (Id.; see Compl. ¶ 5.)

## II. Jurisdiction & Choice of Law

SFO alleges that the Court has diversity jurisdiction over its claim against McCullar. (Compl. ¶ 3); see 28 U.S.C. § 1332(a)(1). SFO is a Tennessee limited liability company whose sole member is a citizen of Tennessee. (Compl. ¶ 2.) McCullar is a citizen of Texas. (Id.) Complete diversity exists. See 28 U.S.C. § 1332(a)(1). Because SFO seeks more than $1.5 million under the Notes, more than $75,000 is in controversy. See id.; (Compl. ¶ 7). Therefore, the Court has subject matter jurisdiction over SFO's claim based on diversity of citizenship. See 28 U.S.C § 1332(a)(1).

McCullar alleges that the Court has diversity jurisdiction over his third-party claim against Starnes. (Third Party Compl.

¶ 3); see 28 U.S.C. § 1332(a)(1). McCullar is a citizen of Texas, and Starnes is a citizen of Tennessee. (Am. Third Party Compl. ¶ 3.) Complete diversity exists. See 28 U.S.C. § 1332(a)(1). McCullar seeks indemnification for any amount for which he is held liable to SFO, and punitive damages of $1.5 million. (See Am. Third Party Compl. ¶¶ 2-4.) Therefore, the amount-in-controversy requirement is satisfied, and the Court has subject matter jurisdiction over McCullar's third-party claim based on diversity of citizenship. See 28 U.S.C. § 1332(a)(1).

In a diversity action, state substantive law governs. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). A federal district court is required to apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Klaxon, 313 U.S. at 496. Tennessee choice of law rules apply.

Tennessee follows the rule of lex loci contractus, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent. Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing Ohio Cas. Ins. v. Travelers Indem. Co.,

7

493 S.W.2d 465, 467 (Tenn. 1973)).  "If the parties manifest an intent to apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met": 1) the choice of law provision must be executed in good faith, 2) the "chosen jurisdiction must bear a material connection to the transaction," 3) the "basis for the choice of law must be reasonable," and 4) the choice of "another jurisdiction's law must not be 'contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern.'"  Id. (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)).

The Notes include a choice of law provision stating that they will be governed by, "to the extent not preempted by federal law, the laws of the State of Tennessee." (See Ex. A at 4; Ex. B., at 4.)  Neither party suggests that the choice of law provision was not entered into in good faith, and both parties assume that Tennsssee law applies.  The choice of Tennessee law is reasonable because McCullar and Starnes executed the Notes to evidence a loan from Independent Bank in Memphis, Tennessee. Therefore, Tennessee substantive law applies to SFO's claim on the Notes.

McCullar's third-party claim for indemnification sounds in contract.  The Agreement contains a choice of law provision stating that it "shall be construed in accordance with and

governed by the laws of the State of Tennessee." (Agreement §
8(g).) No party suggests that the choice of law provision was
not entered into in good faith, and all parties assume that
Tennesssee law applies. The choice of Tennessee law is
reasonable because McCullar and Starnes entered into the
Agreement to govern their real estate investments, some of which
were in Tennessee. Therefore, Tennessee substantive law applies
to McCullar's third-party claim for indemnification.

### III. Motions for Judgment on the Pleadings

#### A. Standard of Review

The standard of review that applies to a motion for
judgment on the pleadings under Federal Rule of Civil Procedure
12(c) is the same as the standard for a motion to dismiss under
Federal Rule of Civil Procedure 12(b)(6). Monroe Retail, Inc.
v. RBS Citizens, N.A., 589 F.3d 274, 279 (6th Cir. 2009)
(citation omitted). When a defendant moves for judgment on the
pleadings, the Court must construe the complaint in the light
most favorable to the plaintiff and accept all well-pled factual
allegations as true. League of United Latin Am. Citizens v.
Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can
support a claim "by showing any set of facts consistent with the
allegations in the complaint." Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 563 (2007). This standard requires more than bare
assertions of legal conclusions. Bovee v. Coopers & Lybrand

C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555.) Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

When a plaintiff moves for judgment on the pleadings, "the motion should be granted if, on the undenied facts alleged in the complaint and assuming as true all the material allegations

of fact in the answer, the plaintiff is entitled to judgment as a matter of law." Lowden v. Cnty. of Clare, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010) (citing United States v. Blumenthal, 315 F.2d 351, 352 (3d Cir. 1963) and Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth., 378 F.3d 596, 600 (7th Cir. 2004)) (internal quotation marks omitted); see also 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 1368 (3d ed. 2011) ("[T]he plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery."). "In other words, if a defendant's answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted." Lowden, 709 F. Supp. 2d at 546 (citing Nat'l Metro. Bank v. United States, 323 U.S. 454, 456-57 (1945)).

In deciding a motion for judgment on the pleadings, "the court considers all available pleadings, including the complaint and the answer." Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citation omitted); see Fed. R. Civ. P. 12(c); Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); cf. Wright, Miller, Kane & Marcus,

supra, § 1368 ("A motion for judgment on the pleadings under Rule 12(c) may be granted only if all material issues can be resolved on the pleadings by the district court."). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." Dudek, 702 F. Supp. 2d at 832; see Bassett, 528 F.3d at 430; Benzon v. Morgan Stanley Distribs., 420 F.3d 598, 603 (6th Cir. 2005) (citations omitted).

### B. SFO's Motion for Judgment on the Pleadings

SFO seeks judgment on the pleadings on its claim against McCullar for payment on the Notes. (See SFO's Mot.; Compl. ¶¶ 5-8.) An action to enforce promissory notes is an action for breach of contract. See Capital TCP, LLC v. New Horizon Memphis, LLC, 2:07-cv-02157-JPM-dkv, 2010 WL 2734148, at *8 (W.D. Tenn. July 9, 2010); Muse v. First People's Bank of Tenn., No. E2005-02869-COA-R3-CV, 2007 WL 845893, at *1 (Tenn. Ct. App. Mar. 21, 2007). To establish a claim for breach of contract under Tennessee law, a plaintiff must show: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach.

12

C&W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (citing ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)); see Markow v. Pollock, No. M2008-01720-COA-R3-CV, 2009 WL 4980264, at *4 (Tenn. Ct. App. Dec. 22, 2009) (citation omitted); Wooten Tractor Co., Inc. v. Arcon of Tenn., L.L.C., No. W2008-01650-COA-R3-CV, 2009 WL 1492227, at *5 (Tenn. Ct. App. May 28, 2009) (citation omitted).

SFO argues that McCullar has admitted facts establishing that the Notes are enforceable and that he has not made payment on them. (See SFO's Mot. 5-6.) McCullar responds that, because of the Agreement with Starnes and his denial of liability on the Notes in his Answer, SFO is not entitled to judgment against him based on the pleadings.[4] (See Resp. to SFO 2-4.)

McCullar has admitted that, on November 26, 2008, he executed the Notes and that the Notes are payable on demand or, if there has been no demand, on November 25, 2009. (See Am. Answer ¶ 5, ECF No. 5; Compl. ¶ 5.) Although McCullar states in his answer that SFO is not a holder in due course, that defense is not well-taken. See Starnes Family Office, LLC v. McCullar, 765 F. Supp. 2d 1036, 1054-55 (W.D. Tenn. 2011). Based on the

---

[4] McCullar also argues that, because he has asserted that Starnes must indemnify him for any liability to SFO, SFO's motion is premature and must await adjudication of that claim. (See Resp. to SFO 5.) Because the Court also decides McCullar's third-party claim for indemnification in this order, that argument is moot.

undenied facts in SFO's complaint, the Notes are an enforceable contract. See Capital TCP, LLC, 2010 WL 2734148, at *8; Lowden, 709 F. Supp. 2d at 546.

McCullar has also admitted that the Notes have matured and that he has not made payment on them. (See Am. Answer ¶ 7; Compl. ¶ 7.) The Notes state that McCullar is jointly and severally liable to Independent Bank for principal amounts of $2,000,000 and $1,005,000. (See Ex. A; Ex. B.) SFO purchased the Notes from Independent Bank. (See Ex. A; Ex. B.) Although McCullar "denies that he was obligated to [make payment] under the facts and circumstances of this case" and "denies that he owes the amount alleged to SFO" (see Am. Answer ¶ 7), because those statements are legal conclusions, not statements of fact, the Court need not give them weight, see Iqbal, 129 S. Ct. at 1949. Based on the undenied facts in SFO's complaint, McCullar is in breach of his obligation under the Notes. See Capital TCP, LLC, 2010 WL 2734148, at *8; Lowden, 709 F. Supp. 2d at 546.

Because McCullar has admitted that he has not made payment on the Notes, and the Notes were assigned from Independent Bank to SFO, he has also admitted that SFO has suffered damages. See Capital TCP, LLC, at 2010 WL 2734148, at *8; (Ex. A; Ex. B). The Notes provide that Starnes and McCullar are jointly and severally liable for a combined principal amount of $3,000,500.

14

(See Ex. A; Ex. B.)   Because Starnes has fulfilled his obligation under the Notes, and McCullar has not, the undenied facts show that SFO has suffered damages at least equal to the $1,500,250 in principal and the accompanying interest it seeks. See Capital TCP, LLC, 2010 WL 2734148, at *8; Lowden, 709 F. Supp. 2d at 546; (Compl. ¶ 7; Ex. A; Ex B).

Because the undenied facts demonstrate that the Notes are an enforceable contract, that McCullar breached that contract, and that SFO has suffered damages, SFO is entitled to judgment as a matter of law on its action to enforce the Notes.   See Capital TCP, LLC, 2010 WL 2734148, at *8; Lowden, 709 F. Supp. 2d at 546.   SFO's Motion for Judgment on the Pleadings is GRANTED.   See Western Energy Partners, LLC v. New Energy Co., LLC, No. 2:02cv1264, 2007 WL 397066, at *3 (S.D. Ohio Jan. 31, 2007) ("The Court may grant a motion for judgment on the pleadings as a matter of law based upon a defendant's admission of all material facts relating to enforcement of a note.") (citation omitted).

### C. Starnes' Motion for Judgment on the Pleadings

On January 28, 2011, the Court partially granted Starnes' motion to dismiss McCullar's third-party claims against him as having been improperly joined under Federal Rule of Civil Procedure 14(a) and dismissed all of McCullar's third-party claims other than his indemnification claim.   See Starnes Family

Office, 765 F. Supp. 2d at 1056-58.  Starnes now seeks judgment on the pleadings on that claim.  (See Starnes' Mot.)

In Tennessee, "indemnification requires the complete shifting of liability for loss from one party to another" and rests on two principles: persons should be responsible for their own wrongdoing and wrongdoers should be liable to persons required to pay damages that the wrongdoers should have paid. Winter v. Smith, 914 S.W.2d 527, 541 (Tenn. Ct. App. 1995) (citations omitted); see Owens v. Truckstops of Am., 915 S.W.2d 420, 433 (Tenn. 1996).  When a third party's wrongful conduct causes a defendant to be liable to a plaintiff, the defendant is entitled to indemnification from the third party.  See Houseboating Corp. of Am. v. Marshall, 553 S.W.2d 588, 589 (Tenn. 1977) ("The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former." (quoting S. Coal & Coke Co. v. Beach Grove Mining Co., 381 S.W.2d 299, 302 (Tenn. Ct. App. 1963))).

Under Tennessee law, an obligation to indemnify may arise expressly by contract between the parties or impliedly from the parties' relationship.  Id. (citations omitted); Farmers Mut. of Tenn. v. Athens Ins. Agency, 145 S.W.3d 566, 568 (Tenn. Ct. App. 2004); Winter, 914 S.W.2d at 541-42.  For indemnification to

16

arise expressly by contract, "there must be a clear and unequivocal expression of an intention to indemnify." First Am. Bank of Nashville, N.A. v. Woods, 734 S.W.2d 622, 632 (Tenn. Ct. App. 1987) (citations omitted). "Courts will impose an implied obligation to indemnify when the obligation is a necessary element of the parties' relationship . . . or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties." Winter, 914 S.W.2d at 542 (citations omitted). "In the absence of an express contract, an obligation to indemnify will be implied only if the party from who [sic] indemnification is sought breached a contract or engaged in some other related tortious conduct." Id. (citations omitted).

Starnes argues that McCullar is not entitled to indemnification under the Agreement, that the Agreement is the completely integrated embodiment of their bargain, that any evidence to vary its terms would be barred by the parol evidence rule, and that any purported oral indemnification agreement would be barred by the statute of frauds. (See SFO's Mot. 2-7.) McCullar responds that the Court has already decided that McCullar has stated a plausible claim for indemnification. (See Resp. to Starnes 1-3.) McCullar also argues that Agreement provides for indemnification and that neither the parol evidence

rule nor the statute of frauds bars his claim. (See id. at 4-8.)

In its January 28, 2011 order, the Court concluded that McCullar's claim for indemnification was proper under Federal Rule of Civil Procedure 14(a). See Starnes Family Office, 765 F. Supp. 2d at 1058. Despite McCullar's argument to the contrary, the Court did not "implicitly acknowledge[] the facial validity" of his claim. (See Resp. to Starnes 3.) The Court's decision rested only on the conclusion that McCullar's indemnification claim was based on Starnes' potential liability for SFO's claim against McCullar. See Starnes Family Office, 756 F. Supp. 2d at 1057-58. The Court may consider the merits of McCullar's indemnification claim against Starnes.

Starnes argues that there is no express indemnification provision in the Notes or the Agreement. (See Starnes' Mot. 2-4.) McCullar argues that the Agreement contains an indemnification provision broad enough to apply plausibly to his claim for indemnification against Starnes for McCullar's liability to SFO. (See McCullar's Supplemental Mem. 2-3.) McCullar argues alternatively that a right to indemnification may be implied from the Agreement. (See Resp. to Starnes 4-7.)

The Agreement includes an express indemnification provision. In its first section, it provides, "Any appointed Co-Manager shall be indemnified and exculpated to the maximum

18

extent provided by statute governing the Entity or, if greater, to the same extent as any member/partner or manager under the terms of the existing Operating Agreement or Partnership Agreement of such Entity." (See Agreement § 1(a)(i).) In the Agreement, McCullar is appointed a Co-Manager. (See id.) The issue is whether that provision plausibly applies to McCullar's obligation on the Notes.

"In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent." Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006) (citation omitted). "If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute." Id.; see also Allmand v. Pavletic, 292 S.W.3d 618, 630 (Tenn. 2009) (citation omitted). If the language is "susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language," and "the court must apply established rules of construction to determine the intent of the parties." Allmand, 292 S.W.3d at 630 (citations omitted). When contractual language is ambiguous, "a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract." Allstate, 195 S.W.3d at 612.

19

The indemnification provision in the Agreement is a single sentence within a five-paragraph section titled "Management of the Entities."   (See Agreement § 1(a)(i).)   That section exclusively addresses the management of the Entities co-owned by Starnes and McCullar and amends the management structures provided in the operating agreements and partnership agreements governing the Entities. (See id.)  In this context, by limiting indemnification to that "provided by statute governing the Entity or, if greater, to the same extent as any member/partner or manager under the terms of the existing Operating Agreement or Partnership Agreement of such Entity," the plain language of the indemnification provision applies only to Co-Managers' liability for management of the Entities. (See id.)  McCullar's argument that the express indemnification provision in the Agreement plausibly applies to the Notes is not well-taken.

McCullar alternatively argues that the Agreement contains language that is "tantamount" to an indemnification provision. (See Resp. to Starnes 5.)   He relies on a portion of the Agreement's introductory clauses that states:

> WHEREAS, McCullar has indicated that he is not capable, at this time, of funding his proportionate share of any capital contribution necessary to capitalize the Entities and River Tide to the point that they will be able to cover their obligations on a going forward basis; and
>
> WHEREAS, Starnes has agreed to finance the costs of funding the financial obligations of the Entities and

River Tide, for the time being, upon the terms and
subject to the conditions set forth herein.

(<u>See</u> Agreement 1.)

The two clauses do not contain "a clear and unequivocal
expression of an intention to indemnify." <u>See</u> <u>First Am. Bank of</u>
<u>Nashville</u>, 734 S.W.2d at 632.  In stating that "Starnes has
agreed to finance the costs of funding the financial obligations
of the Entities, and River Tide, for the time being," the plain
language of the clauses demonstrates that Starnes agreed to
assume temporary responsibility for financing the Entities, not
to relieve McCullar of ultimate liability for the principal
amounts of the debt obligations that the Entities had incurred.
(<u>See</u> Agreement 1.)  By providing that Starnes agreed to finance
the Entities' costs "upon the terms and subject to the
conditions set forth" in the Agreement, the plain language of
the clauses demonstrates that they are not themselves the terms
of the Agreement.  (<u>See</u> <u>id.</u>)  The Agreement provides that
Starnes has agreed to finance the Entities by providing a line
of credit to the Entities, not by personally assuming all of the
Entities' existing debt, much less by agreeing to assume debt
obligations, such as the Notes, that did not exist at the time
of the Agreement.  (<u>See</u> Agreement § 2; <u>see</u> <u>also</u> Ex. A; Ex. B.)

21

McCullar's argument that the Agreement's introductory clauses constitute an indemnification provision is not well-taken.[5]

To the extent McCullar argues that an indemnification obligation may be implied from the Agreement, the Agreement applies only to identified Debt Obligations. (See Agreement § 1(a)(iv).)  When the Agreement was formed, there was no obligation to Independent Bank, and the Notes did not exist. (See Ex. A; Ex. B.)  For the Agreement to be construed as a requirement that Starnes indemnify McCullar for his personal obligation on the Notes, a modification would be required.  The Agreement's integration clause provides, "No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all parties."  (See Agreement § 8(b).)  McCullar has not alleged that any such writing exists. McCullar's argument that Starnes' indemnification obligation may be implied from the Agreement is not well-taken.

To the extent McCullar alleges that he and Starnes had an understanding other than the Agreement that might give rise to an indemnification obligation on Starnes' part, McCullar has not plausibly alleged that such an understanding is in writing. Under Tennessee's statute of frauds, "any special promise to answer for the debt, default, or miscarriage of another person"

---

[5] Because the relevant provisions of the Agreement are not ambiguous, the Court need not consider parol evidence in interpreting them.  See Allstate, 195 S.W.3d at 612.

must be "in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party." Tenn. Code Ann. § 29-2-101(a)(2-5). The statute makes oral indemnification provisions unenforceable. See id. McCullar argues that, under Squibb v. Smith, 948 S.W.2d 752, 756 (Tenn. Ct. App. 1997), an oral indemnification agreement could be enforceable in these circumstances. (See Resp. to Starnes 8.) Squibb held only that "an oral agreement among or between cosureties or coguarantors whereby the parties agree to an apportionment of liability as between or among themselves, does not fall within the purview of the statute of frauds." See Squibb, 948 S.W.2d at 756. Unlike the parties in Squibb, McCullar and Starnes are co-makers of the Notes who undertook a joint and severable direct obligation, not co-guarantors of an obligation who agreed to apportion their contingent liability in a particular way. See id.; (Ex. A; Ex. B). The argument that McCullar and Starnes formed an oral indemnification agreement is not well-taken.

McCullar's claim for indemnification is not plausible because he has not alleged facts showing that Starnes agreed to assume McCullar's obligation under the Notes. Starnes' Motion for Judgment on the Pleadings is GRANTED.

**IV.  Motion to Consolidate**

On April 8, 2011, McCullar filed a separate action against Starnes. (See Compl., ECF No. 1 in Case No. 11-2262.) In that action, McCullar brings claims for fraud, breach of contract, breach of fiduciary duty, and indemnification based on the same facts that he alleges in his counter and third-party complaints in Starnes Family Office, LLC v. McCullar, No. 10-2186. (See id. ¶¶ 31-40); see also Starnes Family Office, 765 F. Supp. 2d at 1043-44 (summarizing allegations).

On May 26, 2011, McCullar filed a motion to transfer his action against Starnes to this Court and consolidate it with SFO's action against him ("Motion to Consolidate"). (See Meredith McCullar's Mot. to Transfer and Consolidate, ECF No. 54.) On June 23, 2011, McCullar's action was transferred to this Court. (See ECF No. 18.) The Court must decide whether to consolidate the 2011 action, McCullar v. Starnes, No. 11-2262, with Starnes Family Office v. McCullar, No. 10-2186.

### A. Standard of Review

Under Federal Rule of Civil Procedure 42, where actions before a court "involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P 42(a). Rule 42 provides a court with broad discretion to consolidate similar actions pending before it. Cantrell v. GAF

Corp., 999 F.2d 1007, 1011 (6th Cir. 1993) (citation omitted). "A court may issue an order of consolidation on its own motion, and despite the protestations of the parties." Id. In deciding whether to consolidate cases, the court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Id. (citing Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985)).

### B. Analysis

McCullar argues that his suit against Starnes should be consolidated with SFO's action against him because "both cases arise out of the purchase of two promissory notes and the various claims between the parties relating thereto." (See Mem. in Supp. of Mot. to Transfer and Consolidate, ECF No. 54-1.) ("Consolidation Mem.") SFO and Starnes argue that "the claims McCullar asserts against Starnes for tort, breach of a contract other than the promissory notes, and for breach of alleged fiduciary duties are unrelated to his liability under the promissory notes." (See Combined Resp. to Consolidation 4.) SFO and Starnes emphasize that consolidation would result in

inefficiencies because the actions are at different stages of litigation. (See id. at 4-6.)

These actions may be consolidated only if they involve a "common question of law or fact." Fed. R. Civ. P. 42. The only issue that has not been resolved in <u>Starnes Family Office, LLC v. McCullar</u>, No. 10-2186, is whether to award attorney's fees to SFO and in what amount. Although <u>McCullar v. Starnes</u>, No. 11-2262, and <u>Starnes Family Office, LLC v. McCullar</u>, No. 10-2186, might have shared some common questions of law or fact before the Court resolved SFO's claim against McCullar and McCullar's third-party claim against Starnes, there is no judicial economy to be gained by consolidating these actions in light of this order. See <u>Cantrell</u>, 999 F.2d at 1011. McCullar's Motion to Consolidate is DENIED.

### V.   Conclusion

For the foregoing reasons, SFO's Motion for Judgment on the Pleadings is GRANTED, and Starnes' Motion for Judgment on the Pleadings is GRANTED. The Court ORDERS that judgment be entered against McCullar in the amount of $1,723,319.04 plus daily interest of $411.02 on the underlying principal amount of $1,500,250.00 from February 7, 2011, until the date of final judgment.

So ordered this 1st day of September, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE